Richard Gertler
Thaler Gertler, LLP
90 Merrick Avenue, Suite 400
East Meadow, New York 11554
(516) 228-3553

**UNITED STATES BANKRUPTCY COURT**  ID #
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 09-72685 |
| DORIS PANOS DESIGNS, LTD., | |
| | Honorable Alan S. Trust |
| Debtor. | |

-----------------------------------------------------------x

**AFFIRMATION IN SUPPORT OF ORDER TO SHOW CAUSE UNDER §§105(a), 364(c), AND 364(d) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING WITH SUPERPRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY SENIOR LIENS**

TO:    HONORABLE ALAN S. TRUST
        UNITED STATES BANKRUPTCY JUDGE

Doris Panos Designs, Ltd. debtor and debtor-in-possession herein (hereinafter referred to as "DPD" and/or "Debtor"), as and for the entry of orders of the Court, including entry of the prefixed order to show cause (the "Order to Show Cause"), respectfully represents:

### SUMMARY OF MOTION AND RELIEF SOUGHT

1.     As detailed below, absent the immediate access to an adequate financing and credit facility, the Debtor will not have sufficient liquidity to sustain the going concern value of their business and assets, resulting in immediate and irreparable harm to the Debtor's creditors and estate. Specifically, the Debtor's operations require sufficient levels of working capital to fund and support ordinary business expenditures,

including payroll and other overhead expenditures. Thus, the Debtor is seeking to implement the post-petition financing (the "DIP Facility") as summarized herein.

    2.    Accordingly, by this motion, the Debtor seeks entry of an Order:

        (i) scheduling a hearing (the "Interim Hearing") as soon as practicable to consider the entry of an Order pursuant to §§364(c)(1), §364(c)(2), §364(c)(3), §364(d)(1) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(c) authorizing the Debtor to obtain aggregate post-petition financing in the form of a revolving credit facility in the total amount of $100,000.00 in accordance with the budget (the "Interim Budget") annexed hereto as **Exhibit "A"**, pursuant to the terms of the Debtor in Possession Finance and Security Agreement dated April 17, 2009[1], annexed hereto as **Exhibit "B"** (the "DIP Financing Agreement"), by and between the Debtor and Paul Panos (the "DIP Lender")[2];

        (ii) granting the DIP Lender superpriority liens and security interests pursuant to §364(c) and §364(d) of the Bankruptcy Code in certain pre- and post-petition property of the Debtor as described herein, pursuant to the terms and conditions of the DIP Financing Agreement;

        (iii) approving the terms and conditions of the DIP Financing Agreement and authorizing the Debtor to execute and deliver, from time to time, all such documents, instruments and agreements and perform such other acts as may be required, necessary and desirable in connection with the DIP Financing Agreement, including but not limited to the payment of all fees, interest and charges required under the DIP Financing Agreement and/or the DIP Facility.

    3.    The Debtor respectfully submits that the relief requested herein is critical and vital to its ability to operate as a going concern and to preserve and protect the

---

[1] The final forms of the DIP Financing Agreement and Interim Order annexed hereto are still being negotiated. Any changes to the forms annexed hereto will be disclosed to the Court at or prior to the Interim Hearing and distributed to major parties-in-interest.

[2] All terms not defined herein shall have the same meaning ascribed to them in the DIP Financing Agreement

value of their assets and operations for its creditors, shareholders and estate. Without the stability of a post-petition financing facility, the Debtor believes that it will be unable to sustain its business or preserve the going concern value of the estate, thereby crippling its reorganization efforts from the outset. Absent immediate approval of the financing arrangements as set forth herein, the Debtor would be required to immediately cease operations, resulting in irreparable harm to its estate and creditors. Accordingly, for these reasons and the reasons set forth below, the Debtor respectfully submits that financing on the terms and conditions set forth herein are necessary and in the best interests of the Debtor's creditors.

## JURISDICTION

4. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## PROCEDURE

5. On April 17, 2009, (the "Petition Date"), the Debtor filed its voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of New York (the "Court").

6. The Debtor continues to operate its business and manages its properties as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

7. To the best of Debtor's knowledge, no Creditors' Committee has been appointed by the Office of the United States Trustee as of this date, and there has been no motion for the appointment of a trustee or an examiner.

## BACKGROUND

8. DPD is a designer and merchant of fine jewelry. The Debtor is a New York Corporation, incorporated in 1993 with its principal office located at 130 Old East Neck Road, Melville, New York 11747. DPD also maintains a showroom at 630 Fifth Avenue, New York, New York 10111.

9. The Debtor's assets consist of its inventory with an estimated wholesale value as sold in the ordinary course of business of approximately Five Million Nine Hundred Forty-Five Thousand Dollars ($5,945,000.00.) The Debtor's total liabilities to date are approximately Three Million Two Hundred Forty-Five Dollars ($3,245,000.00). Although considerably higher just a few months ago, the total amount currently owed to Gerber Finance, Inc. by the Debtor is approximately One Million Three Hundred Forty Five Thousand Dollars ($1,345,000.00).

10. By a Loan and Security Agreement dated June 20, 2008, as amended by the First Amendment, dated June 27, 2008 and Second Amendment, dated July 7, 2008 (collectively the "Gerber Credit Facility"), the Debtor entered into a credit facility with Gerber Finance Inc. ("Gerber"), whereunder Gerber agreed to make revolving credit advances to the Debtor in an aggregate amount of the lesser of the Maximum Revolving Amount ($1,800,000) or an amount equal to the borrowing base.

11. As security for the aforementioned Gerber Credit Facility, the Debtor granted Gerber a security interest in and to substantially all of its property and assets, whether real or personal, tangible or intangible, and whether now owned or hereafter acquired, or in which it now has or at any time in the future may acquire any right, title, or interest, including all of the following property in which it now has or at any time in the future may acquire any right, title or interest: all Accounts; all Deposit Accounts and all funds on deposit therein; all cash and cash equivalents; all commodity contracts; all investments, Stock and Investment Property; all Inventory; all Equipment; all Goods; all Chattel Paper, all Documents; all Instruments; all Books and Records; all General Intangibles; all Supporting Obligations; all Letter-of-Credit Rights, all books and records related to the foregoing and all proceeds and products of the foregoing (the "Collateral").

12. Prior to the petition date, Gerber notified Debtor that the Debtor was deemed in default of the Credit Facility, it would not make further advances to Debtor, and that Gerber would enforce the collection provisions set forth in the Credit Facility, including but not limited to an acceleration of all outstanding obligations. At that time, Debtor owed Gerber approximately $1,300,000.00.

13. As part of Gerber's attempt to collect the outstanding obligation, during the past few months, Gerber has been retaining all amounts received from the sales of the Debtor's merchandise, without remitting a percentage of those amounts to the Debtor, as required under the Loan Agreement. Under the guise that it wants to work

out an "acceptable" plan, Gerber has rejected the Debtor's proposals which would allow the Debtor to both reduce the Gerber debt and keep the business alive opting as the only "acceptable" plan the melt down of the Debtor's merchandise. Due to the forced liquidation of over $400,000.00 of merchandise to raise $100,000.00 in cash to pay down Gerber, the Debtor has incurred substantial damages ($300,000.00) due to the actions of Gerber, which will be the subject of an adversary proceeding to be filed by the Debtor. The retention of funds has made it impossible for the Debtor to continue its business. It has crippled the Debtor's cash flow, causing the Debtor to become unable to pay its employees and its creditors.

14.     In an effort to remain a going concern and maintain its operations the Debtor has contacted several potential lenders in an attempt to obtain debtor-in-possession financing ("DIP Financing").

15.     Paul Panos, the ex-husband of Doris Panos (hereinafter referred to as "Paul Panos" or the "DIP Lender") has agreed to provide DIP Financing to the Debtor so that the Debtor may continue its operations as going concerns, thus optimizing the value of the estate pursuant to the terms of the Financing Agreement (the "DIP Financing Agreement") detailed below and annexed hereto as **Exhibit "B"**.

## RELIEF REQUESTED

16.     The Debtor seeks authorization from this Court to enter into and execute certain DIP Financing Agreement, dated April 20, 2009, whereby Paul Panos shall lend

the Debtor up to $100,000.00 subject to the terms and conditions of the DIP Financing Agreement. See **Exhibit "B"**.

17. In this regard, Debtor seeks an entry of an interim order (the "Interim Order") approving the DIP Financing Agreement, which is annexed hereto as **Exhibit "C"**. After notice and hearing, the Debtor shall also seek entry of a final order (the "Final Order") approving the DIP Financing Agreement in substantially the same for as the Interim Order. The significant provisions of the DIP Financing Agreement are summarized below pursuant to 4001(c)(1)(B) of the Bankruptcy Rules.

## PROPOSED DEBTOR-IN-POSSESSION FINANCING

A. The Critical Need for Post-Petition Financing

18. It is critical that the Debtor have access to a post-petition financing facility. The Debtor requires sufficient liquidity to satisfy their ongoing cash requirements to fund ordinary course expenditures including payroll, utility expenses, overhead expenses and other expenses. During the initial stages of these proceedings, Debtor's assets will not be sufficiently liquid to satisfy such obligations in the ordinary course of business without access to post-petition financing. Failure to satisfy such obligations in a timely manner would result in immediate and irreparable injury to the Debtor's estate. Therefore, post-petition financing is essential to the Debtor's ability to continue to sustain the going concern value of the estate.

19. A stable source of credit and funding is also critical to assure suppliers that they will be paid on a timely basis. Absent immediate access to credit pursuant to

the proposed DIP Financing, the Debtor anticipates that they will encounter a severe disruption in their supply of materials and production of Debtor's products resulting in the corresponding decline in the Debtor's production capabilities. Any loss of production attributable to the unavailability of necessary financing would cause a substantial and perhaps irreparable adverse impact on the Debtor value and ability to operate as a going concern.

20. It is evident that the consequences resulting from the Debtor's inability to obtain post-petition financing are disastrous. Without the benefit of a post-petition financing facility, the Debtor will be unable to operate its business adequately, and meet their ongoing obligations. Unless the Debtor is able to obtain post-petition financing immediately, it will be unable to maintain or enhance the value of its estate and its creditors and estate will be irreparably harmed.

21. The Debtor in an exercise of its business judgment has determined that it requires access to a $100,000.00 post-petition credit and financing facility. The Debtor believes that a financing facility at this level will enable it to meet necessary cash and credit obligations and provide them with sufficient liquidity to enable the Debtor to sustain its business operations as contemplated. The liquidity provided under DIP Financing will also assist the Debtor in its efforts to allay concerns of customers and suppliers regarding Debtor's ability to meet its obligations

## B. The Couture 2009 Jewelry Trunk Show

22. There is a crucial trunk show that the Debtor must participate in if it is to continue in business. The Couture 2009 Jewelry Show ("Couture") has been held for approximately 14 years and the Debtor has been a participant since its inception. It offers its exhibitors new business opportunities as well as exposure to more than 40,000 attendees, both at the show and in the months leading up to the show (through marketing, ads, the website and an on-line "Look Book" especially set up for attendees and exhibitors). Last year's sales from the Couture show totaled approximately $600,000.

23. In order to avoid this immediate and irreparable harm, pending the Final Hearing, the Debtor asks the Court to allow the Debtor to obtain DIP Financing on an emergency basis, to make payments of necessary ordinary course expenses, as identified in a budget (the "Budget", a copy of which is annexed to the motion), of which $30,000 will be used to pay for the Debtor's registration at Couture.

24. The Debtor seeks to obtain DIP Financing in the amount of $100,000.00 on an emergency basis, pending an interim hearing. In the event the Debtor is denied the ability to immediately obtain DIP Financing to meet its ordinary and necessary operating expenses, irreparable harm and injury will occur and the Debtor's prospects for rehabilitation will be greatly diminished since it will be unable to participate in the Couture Show, pay its employees and fulfill contractual obligations. Without the relief requested in this Motion, the Debtor will be forced to sell its collateral at melt down

prices and close the business. Aside from the $100,000.00 DIP Financing requested in the instant motion, the Debtor has no access to cash other than the proceeds derived from their business operations.

C. Overview of Proposed DIP Financing

25. After due deliberation and consideration of viable alternatives, the Debtor has determined that it is in its best interests to obtain post-petition financing from the DIP Lender pursuant to the DIP Financing Agreement.

26. Pursuant to 4001-5(a)(i) of the E.D.N.Y. Local Bankruptcy Rules, the DIP Financing Agreement does contain a "Carve-Out" provision as defined in section 1.1(i) of the DIP Financing Agreement. Such a Carve-Out is not specifically dedicated to professional fees and includes any amounts payable pursuant to 28 U.S.C. §1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court as well as fees and expenses of the Debtor's attorneys to the extent allowed by this Court.

27. The Interest Rate on the entire outstanding principal balance of the DIP Financing Agreement shall be ten (10%) percent, which will accrue annually. Other interest rates for default and post-judgment shale apply as per the terms and conditions of the DIP Financing Agreement.

28. The DIP Financing Agreement is to be secured by the Collateral according to section 5.2(a) of the DIP Financing Agreement.

29. The obligations incurred pursuant to the DIP Financing Agreement shall constitute allowed super-priority administrative expenses in the Chapter 11 case, as more specifically discussed in section 5.2(b) of the DIP Financing Agreement.

30. The liens and security interests referred to in the DIP Financing Agreement (the "Liens") shall be deemed valid and perfected by entry of the Bankruptcy Court order, as per sections 5.2(d) and 8.5 of the DIP Financing Agreements. The DIP Lender shall not be required to undergo any other action whatsoever in any jurisdiction in order to validate or perfect the Liens.

31. Section 9.1 of the DIP Financing Agreement lists and discusses all of the Events of Default for the DIP Financing Agreement, which includes, but are not limited to:

> (i) The failure of Debtor to pay any amount of principal or interest on the Note, or any fee or other sums payable hereunder, or any other Lender Indebtedness on the date on which such payment is due, at the stated maturity or due date thereof, or by reason of any requirement for the prepayment thereof, by acceleration or otherwise;
>
> (ii) The failure of Debtor to duly perform or observe any obligation, covenant or agreement on its part contained herein or in any other Loan Document not otherwise specifically constituting an Event of Default under this <u>Section 10.1</u> and such failure continues unremedied for a period of thirty (30) days after the earlier of (i) notice from Lender to Debtor of the existence of such failure, or (ii) any officer or principal of Debtor knows or should have known of the existence of such failure, provided that, in the event such failure is incapable of remedy, or was willfully caused or permitted by Debtor, Debtor shall not be entitled to any notice or grace hereunder;

(iii) The failure of Debtor to pay or perform any other obligation to Lender under any other agreement or note or otherwise arising, whether or not related to this Agreement, after the expiration of any notice and/or grace periods permitted in such documents;

(iv) An order with respect to the Chapter 11 Cases shall be entered by the Bankruptcy Court without the express prior written consent of the Lender, (i) to revoke, reverse, stay, modify, supplement or amend the Bankruptcy Court Order or (ii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to the Debtor equal or superior to the priority of the Lenders in respect of the Obligations, except for allowed administrative expenses having priority over the obligations hereunder, or (iii) to grant or permit the grant of a lien on the Collateral;

## **SECTION 364 OF THE BANKRUPTCY CODE**

32. §364 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1203, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

(c) If the Trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt:

(i) With priority over any or all administrative expenses of the kind specified in 503(b) or 507(b) of this title;

(ii) Secured by a lien on the property of the estate that is not otherwise subject to a lien; or

16

> (iii) Secured by a junior lien on property of the estate that is subject to a lien

33. Generally, §364(c) of the Bankruptcy Code requires a debtor to demonstrate that alternative sources of credit are not available under §364(a) or (b). In re Ames Dep't Stores, Inc. 11 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). "[A] debtor is not required to seek credit from every possible source...[but only to] show that it has made a reasonable effort to seek other sources of credit available." Id.

34. Against this statutory backdrop, courts will evaluate the facts and circumstances of a debtor's case, and will accord significant weight to the debtor's business judgment regarding the necessity for obtaining financing. Bray v Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986).; *see also* Ames Dep't Stores, 111 B.R. at 40. For example, the need for a swift injection of cash to preserve a debtor's business satisfies the requirements of §364(d) of the Bankruptcy Code, when coupled with unsuccessful attempts to locate alternative financing sources. Id. (primary facts supporting priming included lack of alternative financing sources and the need to obtain prompt cash infusion to preserve value of debtor's business).

35. As set forth below, it is impossible for the Debtor to obtain post-petition working capital financing on an unsecured basis, pursuant to §364(a) or §364(b) of the Bankruptcy Code. Rather, the circumstances of this case require the Debtor to obtain other financing under §364(c) and to satisfy the requirements thereof. Accordingly, the Debtor respectfully requests that this Court authorize the Debtor to enter into the DIP

Financing Agreement with Paul Panos and to obtain post-petition financing pursuant to the terms and conditions contained therein.

## AVAILABILITY OF DIP FINANCING

36. In light of its recent experience when the Debtor undertook a search for new financing, the refusal of existing creditors to extend unsecured credit to the Debtor, and the current climate in the lending industry, it was self evident to the Debtor that financing on an unsecured basis was not available. Accordingly, the Debtor concluded that no other source of financing existed on terms more favorable than that offered by Paul Panos through the DIP Financing Agreement within the necessary time frame required by the Debtor.

37. Where, as here, a debtor has demonstrated the unavailability of credit without incurring a senior lien, courts generally will not override the debtor's prudent and responsible exercise of its basic business judgment consistent with its fiduciary duties to the estate and its creditors in negotiating an appropriate financial package. Ames Dep't Stores, 11 B.R. at 38 (observing that courts permit debtors in possession to "exercise their basic business judgment consistent with their fiduciary duties"); *See also* In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985).

## GOOD FAITH

38. Inasmuch as the terms and conditions of the DIP Financing Agreement are fair and reasonable, and were negotiated in good faith and at arms-length, Paul Panos

should be accorded the benefits of section 364(e) as necessary for any and all provisions of the DIP Financing Agreement.

### REQUEST FOR ENTRY OF AN INTERIM ORDER TO AVOID IRREPARABLE HARM

39. Pursuant to Rule 4001(c)(2), a minimum of fifteen (15) days' notice is required before a final hearing on this Motion may commence. However, such Rule provides that the Court "may conduct a hearing before such 15 day period expires, but may authorize the obtaining of credit and the used of only that amount of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2).

40. As noted above, it is essential to the continued operation of the Debtor's business that they be authorized by this Court to obtain financing on an interim basis pending the Final Hearing. Funds are urgently needed to meet the Debtor's immediate working capital and other liquidity needs and to pursue this case in an orderly manner. In the absence of immediate post-petition financing, the Debtor's Chapter 11 efforts would be immediately and irreparably jeopardized.

41. Based on the foregoing, the Debtor respectfully requests that an Interim Hearing on the Motion pursuant to Rule 4001(d) be scheduled as soon as practicable to consider the entry of the proposed Interim Order annexed hereto as **Exhibit "C"** authorizing the Debtor to borrow from the DIP Lender on a secured basis in an amount

of $100,000.00 pursuant to the terms of the DIP Financing Agreement and the Interim Order.

## NOTICE

42. Notice of this Motion has been provided to (i) the Office of the United States Trustee, (ii) the proposed DIP Lender, (iii) the Debtor's secured creditors and (iv) the Debtor's twenty (20) largest unsecured creditors by facsimile, hand delivery or overnight mail. The Debtor respectfully submits, and requests that this Court so find, that the notice provided in this matter is good and sufficient notice of the relief requested herein.

## CONCLUSION

43. For all the reasons set forth in this Motion, the Debtor respectfully requests that this Court enter the prefixed Order to Show Cause pursuant to Sections 102(1) and 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c): (i) to fix a preliminary hearing date on shortened notice and a final hearing date on at least 15 days notice to consider the relief requested in the Motion; and (ii) authorize the manner of notice thereof. The Debtor proposes to give notice of the Motion to Gerber, the Office of the United States Trustee, and its 20 largest creditors. The Debtor proposes that objections to such relief be in writing, contain requisite information respecting the objecting party's status, state with particularity the legal and factual basis of any objection, and be filed and served such that they are received by this Court and the Debtor's counsel at least three days prior to the final hearing. The Debtor asserts that

such notice is appropriate under the circumstances pursuant to Section 102 of the Bankruptcy Code and Bankruptcy Rule 4001(c).

44. No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter the Interim Order and, after notice and a hearing, enter the Final Order (substantially in the form of the Interim Order) (i) authorizing the Debtor to obtain interim and final secured post-petition financing pursuant to the DIP Financing Agreement; (ii) granting Paul Panos superpriority administrative expense status in connection therewith; (iii) scheduling a final hearing on the DIP Financing Agreement and prescribing the form and manner of notice thereof; and (iv) granting such other and further relief as is just and proper.

Dated: April 20, 2009
     East Meadow, New York

                                            **Thaler & Gertler, LLP**
                                            *Proposed Attorneys for the*
                                            *Debtor and Debtor-in-Possession*

                                            Richard Gertler
                                            90 Merrick Avenue, Suite 400
                                            East Meadow, NY 11554
                                            Telephone: (516) 228-3553
                                            Facsimile: (516) 228-3396